**NOT FOR PUBLICATION**

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| In Re: Frederick Renzulli, Debtor. | Case No.: 15-14918-ABA<br>Adv. No.: 15-01983-ABA |
| Frederick Renzulli, Plaintiff<br>v.<br>Joyce Ullman, Defendant. | Chapter: 7<br>Judge: Andrew B. Altenburg, Jr. |

## MEMORANDUM DECISION

Before the court is a Motion for Summary Judgment by Defendant Joyce Ullman (hereinafter the "Defendant" or "Ms. Ullman"), who is counsel to Geraldine Renzulli, and a Cross-Motion for Summary Judgment by Plaintiff Frederick Renzulli (hereinafter the "Plaintiff" or "Debtor"). The Debtor commenced this Adversary Proceeding to recover damages for alleged violations of the automatic stay in section 362 of the Bankruptcy Code. For the reasons that follow, the court finds that actions taken by Ms. Ullman after actual notice of the Debtor's bankruptcy petition filing, seeking to hold the Debtor in contempt of court, did violate the provisions of section 362. Thus, Defendant's Motion for Summary Judgment is denied and Plaintiff's Cross-Motion for Summary Judgment is granted.

## JURISDICTION AND VENUE

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## PROCEDURAL HISTORY

On June 10, 2015, the Debtor, by and through his bankruptcy counsel, Mr. Gigliotti, filed this Adversary Proceeding Complaint ("Complaint") for damages for violation of automatic stay. (Doc. 1). On July 2, 2015, Ms. Ullman filed an Answer to the Complaint ("Answer") (Doc. 3). On

July 27, 2015, Ms. Ullman filed a Motion for Summary Judgment (Doc. 4). On August 17, 2015, the Debtor filed a Cross Motion for Summary Judgment (Doc. 7). Thereafter, the parties requested that the court waive its mandatory mediation which the court obliged. The matter was set down for hearing on October 6, 2015.

Following the hearing the court took this matter under advisement and ordered post-hearing submissions. The last post-hearing submission, the Supplemental Brief in Support of Plaintiff's Cross Motion for Summary Judgment, was filed on November 6, 2015. (Doc. No. 15). This matter is now ripe for disposition.

## FINDINGS OF FACT

The pertinent undisputed facts in this Adversary Proceeding are as follows:

On March 20, 2015, the Debtor filed a "bare-bones" or emergency chapter 7 voluntary petition. The case was assigned Bankruptcy Case No. 15-14918 (hereinafter, the "Lead Case"). The Debtor filed a list of creditors along with his bare bones-petition which listed the Ms. Ullman, as a creditor. (Doc. No. 1 in the Lead Case). On April 6, 2015, the Debtor filed all of his remaining missing documents. (Doc. No. 7). On Schedule A to his petition, the Debtor claimed to hold an ownership interest in a property located at 1830 E. Passyunk Avenue, Philadelphia, PA 19148 (hereinafter the "Property"). As reflected on Question 4 to the Statement of Financial Affairs, the Property was the subject of an action to quiet title in Philadelphia Court of Common Pleas; titled Geraldine Renzulli versus Debtor and Kristin Renzulli (hereinafter the "State Court Action"). Ms. Ullman in the instant matter is counsel to the State Court Action plaintiff, Geraldine Renzulli. Ms. Ullman is identified as such on Question 4 to the Statement of Financial Affairs filed in the Lead Case. In addition, Ms. Ullman was listed on Schedule F of the Debtor's petition.

Prior to the filing of the Lead Case, on March 13, 2015, an Order was entered in the State Court Action decreeing that a constructive trust in the Property was created for the benefit of Geraldine Renzulli and that the Debtor and Kristin Renzulli were to sign over and deliver the deed to the Property to Geraldine Renzulli by March 31, 2015 (Doc. No. 1, Ex. A in the Adversary Proceeding) (hereinafter, the "State Court Order"). Indeed, the Debtor acknowledges this fact on Question 4 to his Statement of Financial Affairs in the Lead Case.

On March 31, 2015, Ms. Ullman sent a letter to Debtor's counsel stating that "I received a Notice of Mr. Fredrick Renzulli's Bankruptcy filing on March 20, 2015. Since I am not a creditor of Mr. Renzulli's, I have no idea why I would be on his list of creditors. I would appreciate if you could address this and respond to me accordingly." Despite actual notice of the Debtor's bankruptcy filing, on April 2, 2015, Ms. Ullman, on behalf of Geraldine Renzulli, filed a Petition for Contempt in the State Court Action (Doc. No. 1, Ex. C) seeking to hold the Debtor and Kristin

Renzulli in contempt of court for failure to comply with the State Court Order.[1] In her Petition for Contempt, Ms. Ullman sought the following sanctions:

> One Thousand Dollars ($1,000.00) per day from March 31, 2015 until the fully executed deed is delivered to Joyce Ullman, Attorney for Petitioner for recording. If the fully executed deed is not returned to Joyce Ullman, attorney for Petitioner, by Kenneth W. Richmond, Esquire within ten (10 days) of the date of this Order, and the $1,000.00 per day fine paid, the parties shall appear before the Court, and Frederick Renzulli and Kristin Renzulli will be subject to incarceration for a maximum period of five (5) months and twenty-nine (29) days, which contempt can only be purged by the delivery of the fully executed deed to Joyce Ullman, Attorney and payment of the fine to Geraldine Renzulli.

(Doc. 1-3, Ex. C). The matter was scheduled for hearing on June 11, 2015 in the State Court Action.

Ms. Ullman appeared at the section 341 Meeting of Creditors on April 27, 2015 and protested being listed as a creditor. It was explained that Ms. Ullman was listed on the petition for notice purposes on behalf of Geraldine Renzulli. (Doc. No. 11, pp. 5 and 7).

Sometime well after the bankruptcy petition filing and the filing of the Petition for Contempt, Kenneth Richmond, Esquire (the Debtor and Kristin Renzulli's counsel[2] in the State Court Action) filed a Suggestion of Bankruptcy in the State Court Action. As stated by the Debtor's bankruptcy counsel, Mr. Michael Gigliotti, Esquire at the October 6 hearing, he did not file the Suggestion of Bankruptcy because "our office didn't really want to get involved in that litigation;" and "after panicked calls to his office realized it hadn't been." On June 5, 2015, Mr. Richmond advised Ms. Ullman that her Petition for Contempt was a violation of the automatic stay. (Doc. No. 15, Ex. A). This correspondence states, in part:

> If you make it necessary, I will be in Court on June 11, 2015 as ordered. However, you and your client will be liable for all attorney fees accrued in connection with your bankruptcy defiant motion to date (mine are at $1,100.00 and potentially $2,500.00 for the Court appearance on the 11th.) You are on notice that the docketed copy of the attached complaint will be presented to Judge Maier on or before June 11, 2015. Of course, Mr. Gigliotti's fees are additional.

*Id.*

---

[1] Ms. Ullman stated in her argument that she sought the advice of experienced bankruptcy attorneys before pursuing her Petition for Contempt.

[2] The court understands that Mr. Richmond served/serves as counsel to both Frederick Renzulli **and** Kristin Renzulli in the State Court Action based upon the language in the State Court Order requiring him to obtain the signature of both defendants on the deed and ¶3 of the Petition of Contempt stating that Mr. Richmond served in that capacity. In addition, it appears that Debtor's bankruptcy counsel, Cappio & Gigliotti also represent both Frederick Renzulli and Kristin Renzulli. See Doc. No. 15, Exs.. A and B (communications and invoices addressed to Kristin Renzulli).

The Complaint was filed on June 5, 2015. The counts brought in the Complaint are (1) Willful Violation Of The Automatic Stay Pursuant To 11 U.S.C. § 362(a)(2); and (2) Willful Violation Of The Automatic Stay Pursuant To 11 U.S.C. § 362(a)(3). In her Answer, Ms. Ullman argued that at the time of the filing, the Property was the property of Geraldine Renzulli not the Debtor. Thus, the contempt petition for failure to comply with the State Court Order to execute and deliver a signed Deed to a property adjudged to be the property of Geraldine Renzulli was not subject to the automatic stay. She also raised the Affirmative Defense that the Debtor filed his chapter 7 in bad faith and for an improper purpose, i.e. to circumvent complying with a non-monetary/collection State Court Action.

At the State Court Action hearing on June 11, 2015, attended by Mr. Richmond, the Debtor, and Kristin Renzulli, Mr. Richmond argued that the state court could not act on the Petition for Contempt because of the automatic stay created by the filing of the chapter 7 bankruptcy. The trial court would not proceed with the matter without first having an Order from the Bankruptcy Court granting relief from the automatic stay.[3] Ultimately, Geraldine Renzulli filed a Motion for relief from the automatic stay to proceed with the State Court Action. That Motion was unopposed by the Debtor. Relief from the automatic stay was granted by this court on July 15, 2015. The relief from stay was limited to allowing Geraldine Renzulli to proceed against the Property and requiring the Debtor to sign the deed over to Geraldine Renzulli pursuant to the State Court Order. Once Ms. Ullman had achieved relief from stay, the trial court held a second contempt hearing on August 3, 2015.

## DISCUSSION

In her Motion for Summary Judgment Ms. Ullman argues the following:

- Ms. Ullman is not a "creditor" and the action did not give rise to a "claim" as defined by sections 101(5) and (10);

- The Property is not property of the estate and the state court's March 13, 2015 order divested from the Debtor any interest he had in the Property;

- Contempt proceedings do not violate section 362; and

- The Debtor's bad faith and continued tortious actions preclude him relief.[4]

---

[3] Ms. Ullman stated that the June 11, 2015 hearing lasted for approximately 20 minutes. No responsive pleadings were filed in the State Court Action in connection with the Petition for Contempt.

[4] Ms. Ullman cites *Dominic's Restaurant of Dayton Inc. et al. v. Mantia et al.*, Nos. 10-3376, 10-3377, 2012 WL 2580741 (6th Cir. July 5, 2012), to support her contention that the Debtor's "bad faith and continued tortious actions preclude him relief." However, at the hearing on October 6, 2015, Ms. Ullman's counsel conceded that this argument was not appropriate to consider in the instant motion for summary judgment before the court. Furthermore, the court notes that "corporations and individuals often file for bankruptcy after having a substantial judgment entered against them and there is no reason to presume that these filings are in bad faith." *In re Allen*, No. 13-14348 GMB, 2013 WL 1952338, at *12 (Bankr. D.N.J. May 10, 2013) (citing *In re Shar*, 253 B.R. 621 (Bankr.D.N.J.1999)).

In his Cross-Motion for Summary Judgment, the Debtor argues:

- Debtor's March 20, 2015 bankruptcy filing was in "good faith";

- The Property became part of the bankruptcy estate pursuant to section 541(a) on March 20, 2015 (the petition filing date);

- Ms. Ullman's April 2, 2015 Petition for Contempt was a violation of the automatic stay pursuant to section 362(a)(2) and (a)(3); and

- Ms. Ullman's April 2, 2015 Petition for Contempt was a willful violation of the automatic stay and Debtor is entitled to damages pursuant to section 362(k)(l) as a matter of law.

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F.Supp.2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The court must construe facts and inferences in a light most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F.Supp.2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986)). "Only evidence admissible at trial may be used to test a summary judgment motion. Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir.1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss*, 289 F.Supp.2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to " 'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.' " *Cardenas v. Massey*, 269 F.3d 251, 254–55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick*, 287 F.Supp.2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248–50. Such a judgment is appropriate "as a matter of law" when the

non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322–23. When one party moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-movant has not filed a cross-motion for summary judgment. *See Peiffer v. Lebanon Sch. Dist.*, 673 F.Supp. 147, 151–52 (M.D. Pa. 1987) (citation omitted). On the other hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

Here, the Debtor and Ms. Ullman do not dispute the material facts necessary to render summary judgment on the issues that follow. The court will address each of Ms. Ullman's arguments in order.

### A. Ms. Ullman Claims That She Is Not A "Creditor" And The Action Did Not Give Rise To A "Claim" As Defined By Sections 101(5) And (10)

Ms. Ullman claims that she is not a "creditor" and the action did not give rise to a "claim" as defined by sections 101(5) and (10). The court finds this argument to be nothing more than a "red herring". Section 362 clearly states:

> **(a)** Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable **to all entities**, . . .

11 U.S.C. § 362 (emphasis added). The statute is clear and unambiguous, the automatic stay applies to "all entities." The Third Circuit has noted, "[f]ollowing the teaching of the Supreme Court, we have held that the 'starting point of any statutory analysis is the language of the statute itself.'" *In re Gi Nam*, 273 F.3d 281, 286 (3d Cir. 2001), *as amended* (Dec. 6, 2001) (citing *Commonwealth of Pa. Dept. of Environmental Resources v. Tri–State Clinical Laboratories, Inc.*, 178 F.3d 685, 688 (3d Cir.1999) (citing *Pa. Dept. of Pub. Welfare v. Davenport*, 495 U.S. 552, 557-58 (1990)); *Kelly v. Robinson*, 479 U.S. 36, 43 (1986). When interpreting statutes or regulations, "the first step is to determine whether the language at issue has a plain and unambiguous meaning . . . ." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). The inquiry ends if the statutory language is unambiguous and the statutory scheme is coherent and consistent. *Id.* (citing *Robinson*, 519 U.S. at 340). Here, the plain language of the statute is unambiguous. The stay applies to *"all entities"*. For that reason, the automatic stay, by its own terms, is not limited to only creditors of a debtor. Certainly, Ms. Ullman falls within the statutory definition and the automatic stay applied.

Nevertheless, the court will explore Ms. Ullman's argument. Under section 101:

**(5)** The term "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

. . .

**(10)** The term "creditor" means—

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

11 U.S.C. § 101. Clearly, Geraldine Renzulli, through the constructive trust created in State Court Order, falls within the definition of a claim under section 101(5)(B). *See In re CRS Steam, Inc.*, 225 B.R. 833, 840 (Bankr. D. Mass. 1998) ("constructive trust rights fit quite well into subsection (B) of this definition [because] . . . a constructive trust is merely an equitable remedy"); *In re Omegas Group, Inc.*, 16 F.3d 1443, 1449 (6th Cir.1994) (concluding that a constructive trust was a "claim" without referring to the statutory definition); and *In re Stylesite Mktg., Inc.*, 253 B.R. 503, 511 (Bankr. S.D.N.Y. 2000) ("A constructive trust is an equitable remedy"). Further, a review of the Petition for Contempt, reveals that Geraldine Renzulli has monetary damages available to her for the Debtor's breach of the State Court Order. "Where the same breach gives the aggrieved party the alternative of an equitable remedy or money damages, the resulting right is a 'claim.'" *In re Mark IV Indus., Inc.*, 438 B.R. 460, 465 (Bankr. S.D.N.Y. 2010) *aff'd*, 459 B.R. 173 (S.D.N.Y. 2011). As a result, Geraldine Renzulli is someone who has a claim against the Debtor that arose before the order for relief concerning the Debtor. She is a creditor. As a creditor, the automatic stay applies.

Ms. Ullman argues that <u>she</u> is not a "creditor" and the action did not give rise to a "claim" as defined by sections 101(5) and (10). This argument misses the point. While Ms. Ullman technically is not a creditor, her client is. She has always represented her client in this matter as evidenced by the Entry of Appearance she filed on behalf of Geraldine Renzulli (Doc. 8 in Lead Case). There can be no dispute that she took action on behalf of her client, rather than herself individually, in this matter and post-petition in the State Court Action. As counsel to Geraldine Renzulli, Ms. Ullman is individually responsible for her actions taken on behalf of her client. *See In re Frankel*, 391 B.R. 266, 271 (Bankr. M.D. Pa. 2008) (citing *In re Timbs*, 178 B.R. 989, 999 (Bankr.E.D.Tenn.1994) (collecting cases)) ("[Creditor's Counsel] does not argue that he did not violate the stay because he only acted in a representative capacity to advance [Creditor's] interests. Numerous courts have found attorneys to be personally liable for damages under § 362(h) even

when their actions were undertaken only within the scope as counsel for a creditor."). The automatic stay applied to Ms. Ullman as a result of her representation of Geraldine Renzulli. To suggest otherwise has no merit.

In the same way, the court is not offended that the Debtor listed Ms. Ullman rather than Geraldine Renzulli as the creditor. In *In re Kouterick*, the court noted that "it is certainly a desirable courtesy to list an attorney who is known to have represented a creditor in prepetition matters regarding the debt in question, in addition to scheduling the creditor separately. Such a practice may expedite matters by getting the attorney involved more quickly if he or she is going to represent the creditor in the case. As noted, however, the court sees no legal obligation to list attorneys for creditors in the schedules or list of creditors." 161 B.R. 755, 759 (Bankr. D.N.J. 1993). At the hearing on October 6, 2015, Ms. Ullman's counsel agreed that it is a common and prudent practice to list creditor's counsel on the list of creditors to ensure that creditors and their counsel receive proper service in the bankruptcy proceeding. Furthermore, the Debtor specifically identified Ms. Ullman as counsel to Geraldine Renzulli on Question 4 to his Statement of Financial Affairs. The purpose here was not to deceive but rather, to give notice. Clearly, that result was achieved.

### B. Ms. Ullman's Claim That The Property Is Not Property Of The Estate And The State Court's March 13, 2015 Order Divested From The Debtor Any Interest He Had In The Property

In her defense, Ms. Ullman argues that the Property was not property of the estate and the State Court Order imposing the constructive trust divested the Debtor of any interest he had in the property. The determination of the existence of a constructive trust is a question of state law. *In re Interlake Material Handling, Inc.*, 441 B.R. 437, 441 (Bankr. D. Del. 2011). Pennsylvania law recognizes constructive trusts. *In re Kamand Constr., Inc.*, 298 B.R. 251, 255 (Bankr. M.D. Pa. 2003) ("[D]efined as: a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition of the retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property."). Under Pennsylvania law, courts may impose a constructive trusts. *Moreland v. Metrovich*, 249 Pa. Super. 88, 97 (1977); and *In re Aultman*, 223 B.R. 481 (Bankr. W.D. Pa. 1998). Since property interests are creatures of state law, "the happenstance of bankruptcy" should not inform the way courts analyze them. *Interlake Material Handling, Inc.*, 441 B.R. at 441. Therefore, the court concludes that there is no question that the State Court Order specifically created a constructive trust in favor of Geraldine Renzulli prior to the commencement of the Lead Case.

The Third Circuit has held that constructive trusts are excluded as property of the estate. *In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1059 (3d Cir. 1993). This is because:

> When a debtor has been declared a constructive trustee before filing a petition in bankruptcy, there is no problem. The beneficiary's equitable interest in the property does not enter the bankruptcy estate. This is so because the equitable interest held in constructive trust for the beneficiary is not property of the debtor. Under § 541(a), the commencement of a bankruptcy case creates an estate that includes all legal and equitable interests of the debtor in property wherever located as of the date the case is commenced. And under section § 541(d), property in which the debtor holds no equitable interest, because he holds it in trust for the beneficiary, does not enter the bankruptcy estate. ***Only the bare legal title to the property held by the debtor enters the bankruptcy estate***, and the debtor/constructive trustee holds that legal title subject to a duty to convey it to the beneficiary of the constructive trust. The beneficiary's equitable interest does not become property of the estate.

*In re Leitner*, 236 B.R. 420, 424 (Bankr. D. Kan. 1999) (emphasis added). Thus, Ms. Ullman is correct in her position that the valid constructive trust as to the Property was not property of the estate.

However, as of the date of the filing of the bankruptcy petition, the Debtor had not "divested" his interest in the Property because he had not yet transferred the Property.[5] At the time of the bankruptcy filing, the Debtor still possessed bare legal title to the Property as he was not required to actually transfer or divest himself of the Property until March 31, 2015. Since the Debtor filed his Petition before that date, no transfer took place[6] and the Debtor still held bare legal title to the Property.[7] Case law is settled on the issue that when the Debtor holds bare legal title to property, as is the case here, the automatic stay applies. *In re Jones*, 121 B.R. 122, 124 (Bankr. M.D. Fla. 1990) ("Because bare legal title to the property is property of the estate, the automatic stay of Section 362 applies"); *In re Walt Robbins, Inc.*, 129 B.R. 452, 455-56 (Bankr. E.D. Va. 1991) (in acknowledging *Jones*, "The automatic stay initially applies to prevent [creditor] from proceeding against the legal title held by the debtor."); *In re Fitzgerald*, 237 B.R. 252, 258 (Bankr. D. Conn. 1999) ("even if the Debtor's interest in the Property is a mere, bare possessory interest, "a mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay."); *In re Aultman*, 223 B.R. at 481 (despite constructive trust, stay relief required to exercise interest); *In re Tranter*, 171 B.R. 256, 259 (Bankr. W.D. Mich. 1994) (acknowledging *Jones* case conclusion); *In re Madison*, 438 B.R. 866 (Bankr. D.S.C. 2010) (bare legal interest requires stay relief).

---

[5] Nor was he required to transfer the Property at that point.

[6] Indeed, if there had been a transfer, there would have been no need for Ms. Ullman to file her Petition of Contempt.

[7] Ms. Ullman's reliance on *In re Flores*, 10-34546-DHS, 2011 WL 44910 (Bankr.D.N.J. Jan. 6, 2011) is misplaced because the debtor in that case was already divested of her interest prior to the bankruptcy filing.

In the end, while a valid constructive trust as to the Property existed, and that constructive trust is not property of the estate pursuant to section 541(d), the Debtor still held bare legal title to the Property and the court finds that the automatic stay applied.[8]

### C. Violation of the Automatic Stay under Sections 362(a)(2) and (a)(3)

By its very terms and except as provided in subsection (b), section 362(a) imposes a stay automatically upon the filing of a bankruptcy petition. *In re Stamper*, No. 03-49235NLW, 2008 WL 724237, at *3 (Bankr. D.N.J. Mar. 17, 2008). The stay "is one of the fundamental debtor protections provided by the bankruptcy laws." *In re Lightfoot*, 399 B.R. 141, 145 (Bankr. E.D. Pa. 2008). "The stay of § 362 is 'automatic' because it is triggered as against all entities upon the filing of the bankruptcy petition, irrespective of whether the parties to the proceedings stayed are aware that a petition has been filed." *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir.1991). The relevant Bankruptcy Code sections here are sections 362(a)(2) and (3) which provide:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of-- . . .
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; . . .

11 U.S.C. § 362.

Ms. Ullman has violated section 362(a)(2) because the Petition for Contempt is absolutely and so obviously an enforcement against the Debtor of the State Court Order obtained before the commencement of the case. Ms. Ullman does not simply seek a turnover of property subject to a constructive trust which is not property of the estate (which the court believes stay relief would be required), but additionally, she seeks monetary sanctions against the Debtor, as well as incarceration! How this is not an enforcement of the pre-petition State Court Order against the Debtor is beyond the court's comprehension.

The filing of a bankruptcy petition operates as a stay of most acts against the debtor, including other judicial proceedings that were commenced prepetition. *In re Knox*, No. 12-20588,

---

[8] The Debtor also contends that his appellate rights to appeal the state court action pursuant to Pennsylvania state law (Pennsylvania Rule of Appellate Procedure 1701(b)(3)) constituted a legal interest under section 541 held by the Debtor at the time of filing. As the court concludes that the stay was in place as to the Debtor's bare legal interest, it need not address this argument.

2012 WL 5512034, at *2 (Bankr. S.D. Ga. Nov. 8, 2012). Certain proceedings are excepted from the automatic stay under section 362(b), but a proceeding for civil contempt is not among them. *Id.* Accordingly, some courts have held that civil contempt proceedings are never excepted from the automatic stay. *See e.g., In re Wiley,* 315 B.R. 682, 684 (Bankr.E.D.La.2004); *see also In re Lincoln,* 264 B .R. 370, 373 (Bankr.E.D.Pa.2001) (citing Eastern District of Pennsylvania precedent that civil contempt proceedings are stayed).[9]

The court in *Knox* found that a contempt proceeding and the resulting contempt order were stayed under section 362(a)(2) because the proceeding was essentially seeking to enforce a prepetition judgment against the debtor. It found that the contempt order was purely pecuniary and thus intended to effectuate collection of the money judgment. *Knox,* 2012 WL 5512034, at *3. Similarly, Mr. Ullman's Petition for Contempt filed post-petition against the Debtor sought the pecuniary sanctions by way of $1,000 a day sanctions and incarceration. Clearly, Ms. Ullman's contempt petition sought to enforce the underlying State Court Order. Like *Knox,* Ms. Ullman's petition was also pecuniary in part (seeking incarceration and fines) and therefore, the Petition for Contempt violated section 362(a)(2).

Even if the court could ignore Ms. Ullman's contempt of the automatic stay in violation of section 362(a)(2), it cannot ignore section 362(a)(3) which prohibits any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. As set forth above, the Debtor's bare legal title in the Property is/was subject to the automatic stay. *See Jones,* 121 B.R. at 124; *Walt Robbins, Inc.,* 129 B.R. at 455-56; *Fitzgerald,* 237 B.R. at 258; *Aultman,* 223 B.R. at 481; *Tranter,* 171 B.R. at 259; and *Madison,* 438 B.R. at 866. Therefore, Ms. Ullman's attempt to have the Property transferred through her Petition for Contempt petition, without obtaining stay relief, also qualifies as a proscribed act under section 362(a)(3).

Therefore, the court concludes that Ms. Ullman's Petition for Contempt filed against the Debtor violated the automatic stay under sections 362(a)(2) and (3).

### D. Damages under Section 362(k)(1)

The court now must consider the appropriate remedy. The Debtor requests an award of actual damages, including attorney's fees and costs, and punitive damages pursuant to section 362(k)(1). An individual harmed by a willful violation of the automatic stay can recover actual damages, including costs and attorneys' fees, as well as punitive damages in appropriate circumstances. *See* 11 U.S.C. § 362(k)(1). The court in *In re Rodriguez,* No. 07–24687 (MBK), 2012 WL 589553 (Bankr. D.N.J. Feb. 22, 2012) explained that the test under section 362(k)(1):

---

[9] Ms. Ullman cites *inter alia, In re St. Clair,* No. 08-27884 MBK, 2011 WL 6888369, at *7 (Bankr. D.N.J. Dec. 29, 2011) in support of her position. That case is factually distinguishable. However, it is interesting to note that before taking any action in that case, the creditor *applied for relief from the stay*. Likewise the court is unpersuaded by the other cases relied on by Ms. Ullman as they involve facts or rules of law not applicable to this matter.

is "remarkably simple" and requires the imposition of sanctions on a party violating the automatic stay upon three provisions: First, the offending party must have violated the automatic stay. Second, the violation of the stay must have been willful. Finally, the willful violation must have caused Debtors some injury.

*Rodriguez*, 2012 WL 589553, at *3 (citing, *In re Miller*, 447 B.R. 426, 433 (Bankr. E.D. Pa. 2011)).

As set forth above, Ms. Ullman has violated the automatic stay. The court need only to address the remaining two elements under section 362(k)(1).

As to the second element of that test, "willfulness can be satisfied by showing simply that the offending party knew about a debtor's bankruptcy but proceeded with the stay violation nonetheless." *Rodriguez*, 2012 WL 589553 at *4 (citation and internal marks omitted). In addition, "[w]illfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional." *In re Lansdale Family Rest., Inc.*, 977 F.2d 826, 829 (3d Cir. 1992). Here, Ms. Ullman undisputedly had actual notice of the Debtor's bankruptcy filing and actively participated in the bankruptcy case. While she protested being listed as a creditor in the matter, a simple review of the petition and schedules reveals that she was given notice. Despite her actual notice of the filing, she intentionally filed her Petition for Contempt. After that, Ms. Ullman was warned that her actions violated the automatic stay but still, she intentionally pressed forward. The court simply cannot ignore the fact that Ms. Ullman had actual notice of the bankruptcy filing, was warned about it, and despite this, intentionally took action on behalf of her client to enforce the State Court Order and to exercise control over the Debtor's bare legal title in the Property in violation of 11 U.S.C. § 362(a)(2) and (3). It makes no matter that Ms. Ullman was improperly listed as the creditor or received bad advice.[10] She had actual notice, was warned, and should not have taken any action against the Debtor or the Property on behalf of her client without first obtaining stay relief. The second element is satisfied.

Finally, there must be some injury. As noted in *Rodriguez*, "actual damages in the form of attorneys' fees [can be] appropriate, despite the fact that there may not have been other compensable harm to a debtor." *Rodriguez*, 2012 WL 589553, at *4. However, "[f]or Debtors to recover attorneys' fees . . . such fees must be reasonable and necessary." *In re Miller*, 447 B.R. 425, 434 (Bankr. E.D. Pa. 2011). *See also Rodriguez*, 2012 WL 589553 at *5 (stating that fees had

---

[10] Reliance on bad legal advice is not an excuse for stay violation. "A good faith reliance on the advice of counsel is not a defense to a debtor's claim for actual damages" for violation of the bankruptcy stay. *In re Brown*, No. BR 12-14058, 2012 WL 3908029, at *8 (Bankr. E.D. Pa. Sept. 7, 2012) (citing *In re Heghmann*, 316 B.R. 395, 406 (B.A.P. 1st Cir.2004). Even before Congress enacted section 362(h), good faith reliance on the advice of counsel was no defense to a contempt action brought to remedy willful violations of the stay. *In re Taylor*, 884 F.2d 478, 483 (9th Cir. 1989) (citing *See Fidelity Mortgage Investors v. Camelia Builders, Inc. (In re Fidelity Mortgage Investors)*, 550 F.2d 47, 57-58 (2d Cir.1976), *cert. denied* 429 U.S. 1093 (1977). "Reliance on advice of counsel may be considered in mitigation of the sanction, but does not constitute a defense to contempt of court." *In re Promower, Inc.*, 56 B.R. 619, 621 (Bankr. D. Md. 1986) *aff'd*, 74 B.R. 49 (D. Md. 1987) (citing *SEC v. First Financial Group of Texas, Inc.*, 659 F.2d 660, 670 (5th Cir.1981)).

to be fair and reasonable and that since the creditor's vigorous prosecution "forced" the debtor to litigate the matter, an award of fees was warranted). At the same time "[o]nly egregious or vindictive misconduct warrants punitive damages for willful violations of the automatic stay . . . ." *Davis v. IRS,* 136 B.R. 414, 424 (E.D. Va. 1992).

In making its determination of whether fees are fair and reasonable, the court is further persuaded by the rationale of the *Miller* court which noted:

> The policy of section 362[k], to discourage willful violations of the automatic stay, is tempered by a reasonableness standard born of courts' reluctance to foster a 'cottage industry' built around satellite fee litigation." *In re Robinson,* 228 B.R. 75, 85 (Bankr. E.D.N.Y. 1998) (citing *Putnam v. Rymes Heating Oils, Inc. (In re Putnam),* 167 B.R. 737, 741 (Bankr. D.N.H. 1994)). It is well established that "[r]easonable and necessary fees do not include unnecessary litigation costs." *Id.*; *See also Yarinsky v. Saratoga Springs Plastic Surgery, PC (In re Saratoga Springs Plastic Surgery,* PC), No. 1:03CV896, 2005 WL 357207, at *54 (N.D.N.Y. Feb. 11, 2005), *aff'd,* 172 Fed. Appx. 339 (2d Cir.2006) ("[A]n 'excessively litigious approach' to violations of the automatic stay that do not cause damages in an[d] of themselves must be guarded against.").

*Miller,* 447 B.R. at 435 (citing *In re Prusan,* No. 09–49716–CEC, 2010 WL 813778, at *3-*4 (Bankr. E.D.N.Y. March 2, 2010) (footnotes omitted). *See also In re Genesys, Inc.,* 273 B.R. 290, 296 (Bankr. D.D.C. 2001) (finding that a debtor has a duty to mitigate damages and fees should not be "completely overblown").

Here, the Debtor may be entitled to the fair and reasonable costs of defending the Petition for Contempt in the State Court Action and pursuing the stay violation claim. Nevertheless, the court is at a complete loss, and is troubled as to why it took so long for Debtor's counsels to file a Suggestion of Bankruptcy in the State Court Action. From this court's experience, such a filing would have obviated the need for responding to the Petition for Contempt and certainly would have potentially avoided the need for this Adversary Proceeding.[11] Adding to the court's concerns is the fact that when Geraldine Renzulli ultimately sought to obtain relief from the stay to enforce the transfer of the Property, it was unopposed by the Debtor. Likewise there was no opposition to the transfer ultimately made in the State Court Action. It seems to the court that the Debtor, or his counsel, contributed in part to the injury caused or at least, could have mitigated the damages.

Finally, this is a chapter 7 case. No co-debtor stay is in effect. Ms. Ullman had every right to continue to pursue Kristin Renzulli as the stay did not apply to her. Since Mr. Richmond and Mr. Gigliotti represent both the Debtor and Kristin Renzulli, and such representation would have been necessary regardless of the bankruptcy filing, it is not appropriate for Ms. Ullman to foot the entire bill. Yes, an award for stay violation is appropriate. But that award has to be curbed by the

---

[11] The court questions whether a formal adversary proceeding was necessary at all. "[A]n adversary proceeding is not necessary for the Debtor to obtain damages for a stay violation. It can also be by motion as a contested matter under Fed. R. Bankr. P. 9014." *In re Perry,* No. 1:09-BK-11476-GM, 2015 WL 7188369, at *4 (Bankr. C.D. Cal. Nov. 13, 2015).

Debtor's failure to mitigate damages and the fact that a non-debtor not subject to the stay and required to defend the Petition for Contempt was also represented by Debtor's counsel.

Unless the parties can come to an agreement as to the amount of reasonable fees and costs, the Debtor shall have twenty (20) days to file a certification of all damages he claims due and incurred solely by the Debtor as a result of the stay violation. Ms. Ullman, within seven (7) days thereof may respond as to the reasonableness of the fees and costs only. This will not be an opportunity for Ms. Ullman to have the court reconsider its position. Ms. Ullman has separate remedies for that. After that, the court shall make a determination of the appropriate sum to be awarded. Counsel is warned that failure to timely submit a certification in this regard will result in denial of any award.

## CONCLUSION

Accordingly, the Defendant's Motion for Summary Judgment is denied and Plaintiff's Cross-Motion for Summary Judgment is granted.

Unless the parties can come to an agreement as to the amount of reasonable fees and costs, the Debtor shall have twenty (20) days to file a certification of all damages he claims due and incurred solely by the Debtor as a result of the stay violation. Ms. Ullman, within seven (7) days thereof may respond as to the reasonableness of the fees and costs only. This will not be an opportunity for Ms. Ullman to have the court reconsider its position. Ms. Ullman has separate remedies for that. After that, the court shall make a determination of the appropriate sum to be awarded. Failure to timely submit a certification of reasonable fees and costs will result in denial of any award.

An appropriate judgment has been entered consistent with this decision.

The court reserves the right to revise its findings of fact and conclusions of law.

Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: November 23, 2015